UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------x
SHIVANNE CORTES-
GOOLCHARRAN,

    Plaintiff,

 -against-

ROSICKI, ROSICKI & ASSOCIATES,
P.C., and FAY SERVICING, LLC.

    Defendants.
-------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 17-CV-3976 (FB) (SJB)

*Appearances:*

*For the Plaintiff:*
SARAH LINDA MANAUGH, ESQ.
Queens Legal Services
89-00 Sutphin Boulevard, Fifth Floor
Jamaica, New York 11435

*For Defendant Rosicki, Rosicki & Associates:*
CAROL A. LASTORINO, ESQ.
Rivkin Radler LLP
926 RXR Plaza
Uniondale, New York 11556

*For Defendant Fay Servicing, LLC:*
ADAM J. FRIEDMAN, ESQ.
Friedman Vartolo LLP
85 Broad Street, Suite 501
New York, New York 10004

**BLOCK, Senior District Judge:**

  Shivanne Cortes-Goolcharran sues Rosicki, Rosicki & Associates, P.C. ("Rosicki"), and Fay Servicing, LLC ("Fay"), under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p. She claims that Fay, a

1

mortgage servicer, and Rosicki, its law firm, violated the FDCPA by sending her letters threatening to foreclose a time-barred mortgage.

Both defendants move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the motions are denied.

# I

The following facts are drawn from Cortes-Goolcharran's complaint. For present purposes, they are taken as true, with all inferences drawn in her favor. *See Allen v. Credit Suisse Secs. (USA) LLC*, 895 F.3d 214, 222 (2d Cir. 2018).

In 2007, Cortes-Goolcharran purchased a home in Queens. The purchase was financed by a loan from HSBC Mortgage Corporation ("HSBC"). The loan was secured by a mortgage.

In May 2008, HSBC began a foreclosure proceeding in state court. HSBC's complaint "expressly declared its election to accelerate and call due the full amount owed under the subject note and subject mortgage." Compl. ¶ 14. A judgment of foreclosure and sale was entered on June 19, 2009.

In 2013, HSBC moved to vacate the judgment and discontinue the foreclosure action for unspecified "administrative reasons." Compl. ¶ 16. Although the motion was granted, Cortes-Goolcharran continued to receive statements "that her loan ha[d] been referred for foreclosure, or that her loan ha[d] been accelerated, or both." Compl. ¶ 18.

2

After terminating the foreclosure proceeding, HSBC sold the mortgage. Fay took over as mortgage servicer in October 2016.

In November 2016, Cortes-Goolcharran filed a quiet-title action in state court to cancel and discharge the mortgage as time-barred pursuant to section 1501(4) of the New York Real Property Actions and Proceedings Law. The action was against HSBC, its successor-in-interest, and various other entities, but *not* Fay or Rosicki. It remains pending.

In April 2017, Rosicki sent Cortes-Goolcharran a "Notice of Default" stating that her mortgage was in arrears and demanding payment of $229,220.38 by May 15, 2017. Failure to pay, the notice warned, "may result in acceleration of your loan" and "a lawsuit to foreclose the mortgage may be commenced." Compl. ¶ 23. At about the same time, Fay sent Cortes-Goolcharran a pre-foreclosure notice pursuant to section 1304 of the New York Real Property Actions and Proceedings Law. Like the notice from Rosicki, the notice from Fay sought payment of $229,220.38, and threatened legal action. In addition, both notices give the date of default as July 1, 2011. The default giving rise to the May 2008 foreclosure occurred before that date and was never cured.

## II

Cortes-Goolcharran claims that the notices from Fay and Rosicki made false and deceptive representations in connection with the collection of a debt, in violation

3

of 15 U.S.C. § 1692e. In particular, she claims that the notices misrepresented the "character, amount, or legal status" of the mortgage, in violation of 15 U.S.C. § 1692e(2), and threatened to take action that "cannot legally be taken or that is not intended to be taken," in violation of 15 U.S.C. § 1692e(5).

The defendants' motions to dismiss raise three issues. First, both Fay and Rosicki argue that the FDCPA does not apply to mortgage foreclosures. Second, they both argue that the mortgage was not time-barred. Third, Fay alone argues that, in light of the quiet-title action, the Court should abstain under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976).

As the defendants acknowledge, their first argument was recently rejected by the Second Circuit. *See Cohen v. Rosicki, Rosicki & Assocs., P.C.*, ___ F.3d ___, 2018 WL 3520253, at *4 (2d Cir. July 23, 2018) ("We . . . join those of our sister circuits that have concluded that a foreclosure action is an 'attempt to collect a debt' as defined by the FDCPA."). The two remaining arguments are addressed below.

**A.    Status of the Mortgage**

A mortgage foreclosure action is subject to a six-year statute of limitations. *See* N.Y.C.P.L.R. § 213(4). "With respect to a mortgage payable in installments, separate causes of action accrue for each installment that is not paid, and the statute of limitations begins to run, on the date each installment becomes due." *Nationstar Mortg., LLC v. Weisblum*, 39 N.Y.S.3d 491, 493 (2d Dep't 2016). However,

4

"[a]cceleration of a mortgage starts running the six-year statute of limitations as to the entire debt." *Stewart Title Ins. Co. v. Bank of New York Mellon*, 61 N.Y.S.3d 634, 638 (2d Dep't 2017).

The holder of a mortgage must take "some affirmative action" to accelerate the mortgage, and "until such action has been taken the [acceleration] provision has no operation." *Wells Fargo Bank, N.A. v. Burke*, 943 N.Y.S.2d 540, 542 (2d Dep't 2012). The filing of a foreclosure action normally constitutes such an affirmative action. *See Beneficial Homeowner Serv. Corp. v. Tovar*, 55 N.Y.S.3d 59, 60 (2d Dep't 2017) (citing *Albertina Realty Corp. v. Rosbro Realty Corp.*, 258 N.Y. 472, 476 (1932)). Cortes-Goolcharran's complaint alleges not only that HSBC filed a foreclosure action, but that its complaint "expressly declared its election to accelerate." Compl. ¶ 14.

In an attempt to negate this allegation, the defendants argue that HSBC could not, as a matter of law, accelerate the mortgage. Paragraph 22 of the mortgage gives the holder the usual right to accelerate if the mortgagee defaults, the holder gives notice of the default, and the mortgagee fails to cure within a specified time. Paragraph 19, however, gives the mortgagee the right "to have enforcement of this Security Instrument stopped" by paying any past due amounts, plus certain fees and costs, at any time before "a judgment has been entered enforcing this Security Instrument." If the mortgagee exercises this right, "then this Security Instrument

5

will remain in full effect as if Immediate Payment in Full had never been required."
Decl. of Carol A. Lastorino (Dec. 20, 2017), Ex. D.[1] The defendants argue that this provision means that HSBC had no right to accelerate until entry of a final judgment. As support they cite a single case in which the New York Supreme Court, Suffolk County, agreed with their interpretation. *See Nationstar Mortg., LLC v. MacPherson*, 54 N.Y.S.2d 825, 836 (Sup. Ct. Suffolk Cty. 2017)

With due respect to the state court, the Court disagrees. Under the defendants' reading, a lender would have to sue for individual missed payments, obtain a judgment for that amount, accelerate the loan, and sue again for the remaining amount. The plain language of the mortgage, however, simply gives the mortgagee

---

[1] The mortgage documents are not part of the complaint. *See International Audiotext Network, Inc. v. American Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) ("[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."). Even if a document is not part of the complaint, "the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *International Audiotext,* 62 F.3d at 72). Since, as stated in the text, the Court rejects the defendants' interpretation of the acceleration clause, it need not decide whether the mortgage is "integral" to Cortes-Goolcharran's complaint. *See id.* ("[W]e reiterate here that a plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough.").

the right to stop foreclosure and keep the mortgage in effect "as if" there had been no acceleration. In other words, it gives the mortgage the right to undo acceleration, not the right to prevent it.

Moreover, even that right is contingent on payment of the arrears. Since Cortes-Goolcharran never cured her default, she never obtained the right to undo HSBC's acceleration.

Finally, even if the defendants were correct that only entry of judgment triggered acceleration, that event occurred on June 19, 2009. The notices threatening foreclosure were sent by Fay and Rosicki in May 2017, well more than six years later.

In the alternative, the defendants argue that HSBC's motion to vacate the judgment and discontinue the foreclosure action effectively revoked its acceleration. "A lender may revoke its election to accelerate the mortgage, but it must do so by an affirmative act of revocation occurring during the six-year statute of limitations period subsequent to the initiation of the prior foreclosure action." *NMNT Realty Corp. v. Knoxville 2012 Tr.*, 58 N.Y.S.3d 118, 120 (2d Dep't 2017). Discontinuance of a foreclosure action does not necessarily constitute such an affirmative act. Rather, it may, as in *NMNT Realty*, "raise[] a triable issue of fact" as to the intent behind the discontinuance. *Id.*

Here, Cortes-Goolcharran alleged that HSBC discontinued the foreclosure action for "administrative reasons." That might mean that HSBC intended to forgive the default and revoke its acceleration, but it might also mean that HSBC simply intended to bring another foreclosure action for the full amount; for now, Cortes-Goolcharran is entitled to the more favorable inference. In addition, she alleged that she continued to receive statements that her loan was still accelerated and/or being foreclosed. That allegation, if proven, would negate any inference that HSBC intended to revoke its acceleration.

In sum, Cortes-Goolcharran has adequately alleged both that her mortgage was accelerated, and that the acceleration was not revoked. As a result, she has adequately alleged that an action to foreclose the mortgage would have been time-barred.

**B.     Abstention**

"Generally, as between state and federal courts, the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction[.]" *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). This rule "stems from the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Id.* In *Colorado River*, the Supreme Court held that "considerations of [w]ise judicial administration, giving regard to conservation of judicial

resources and comprehensive disposition of litigation," could justify dismissal of a federal action, but only in "exceptional" circumstances. *Id.* at 818. "Only the clearest of justifications will warrant dismissal." *Id.* at 819.[2]

"[A] finding that the concurrent proceedings are 'parallel' is a necessary prerequisite to abstention under *Colorado River*." *Dittmer v. City of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998). "Suits are parallel when substantially the same parties are contemporaneously litigating substantially the same issue in another forum." *Id.* (quoting *Day v. Union Mines Inc.*, 862 F.2d 652, 655 (7th Cir. 1988)). By contrast, "the mere potential for conflict in the results of adjudications, does not, without more, warrant staying exercise of federal jurisdiction." *Colorado River*, 424 U.S. at 816.

The reason the suits must be parallel is easy to see. The result of *Colorado River* abstention is dismissal of the federal suit, on the assumption that the state suit will adjudicate substantially the same claims between substantially the same parties and that the federal suit was, therefore, superfluous. If the state suit will not resolve the same claims, then other doctrines – such as res judicata and collateral estoppel – are sufficient to mitigate the risk of inconsistent outcomes without the

---

[2] Confusingly, while abstention – particularly, *Colorado River* abstention – does not imply a lack of subject-matter jurisdiction, courts often evaluate abstention claims under Federal Rule of Civil Procedure 12(b)(1). *See, e.g.*, *City of New York v. Milhelm Attea & Bros.*, 550 F. Supp. 2d 332, 341-42 (E.D.N.Y. 2008). The correct procedural vehicle is immaterial in this case.

harsh side effect of depriving the plaintiff in the federal suit of a possible remedy without recourse.

This suit and the state-court quiet-title action are not parallel. Fay and Rosicki are not defendants in the quiet-title action, and HSBC and its successor-in-interest are not parties here. The validity of the mortgage is at issue in both cases, but in the context of completely different claims. Cortes-Goolcharran's FDCPA claims are premised on the invalidity of the mortgage, such that an adverse determination in the quiet-title action might, as a practical matter, doom the FDCPA claims. But it is certainly not the case that a determination that the mortgage is time-barred would automatically entitle her to relief under the FDCPA.

Since the two suits are not parallel, *Colarado River* abstention does not apply.

## III

For the foregoing reasons, the motions to dismiss are denied.

**SO ORDERED**.

                                                /S/ Frederic Block
                                                FREDERIC BLOCK
                                                Senior United States District Judge

Brooklyn, New York
August 7, 2018